**Christopher D. BREADS, Plaintiff,**

v.

**John MOEHRLE, Chief of Security, Erie County Correctional Facility, Defendant.**

**Civ. No. 89–1020L.**

United States District Court, W.D. New York.

Dec. 10, 1991.

Christopher D. Breads, pro se.

Desmond Hughes, Asst. County Atty., Erie County, Buffalo, N.Y., for defendant.

## DECISION AND ORDER

LARIMER, District Judge.

This case was referred to Magistrate Judge Kenneth R. Fisher pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). On September 12, 1991, Magistrate Judge Fisher filed a Report and Recommendation that the parties' cross-motions for summary judgment be denied. No objections were filed by either party to the Report and Recommendation.

I agree with Magistrate Judge Fisher that there does appear to be material facts in issue which preclude the granting of summary judgment at this time.

Therefore, Magistrate Judge Fisher's Report and Recommendation is accepted and adopted pursuant to Title 28 U.S.C. § 636(b)(1)(B). The parties' cross-motions for summary judgment are denied.

IT IS SO ORDERED.

### DECISION AND ORDER
(on motion to amend)

### AND

### REPORT AND RECOMMENDATION
(on motions for summary judgment)

KENNETH R. FISHER, United States Magistrate Judge.

Before the court are plaintiff's motion for summary judgment (originally filed as a motion for a directed verdict and later converted by order dated January 14, 1991), and defendant's cross motion for summary judgment. Also pending before the court is plaintiff's motion to amend the complaint, originally filed December 1, 1989, which has not been addressed by defendants. This case has had a somewhat tortured legal history which stems in part from defense counsel's inattention to the case and in part from confusion within the district court concerning the judicial officer to whom these motions were assigned for disposition. The original referral order to the undersigned limited the referral to a

discovery motion and the motion to amend the complaint. The docket sheet, however, reflected that the entire matter had been referred to me.[1] Defense counsel did not respond to either motion (although defendants made a prior motion for an order directing plaintiff to serve and file an amended complaint with numbered paragraphs—docket entry # 6). In view of defense counsel's failure to respond to the motion for an order compelling discovery, I issued an order March 26, 1991, granting the motion. Defense counsel (Assistant County Attorney Kelly Anne Brinkworth) corresponded with the court to confirm that compliance with the order would occur forthwith.

The trail followed by plaintiff's motion to amend is more complex. Again, however, defendant has not responded to the motion to amend. Indeed, presumably in view of defendant's motion for an order directing plaintiff to serve and file an amended complaint with separately numbered paragraphs in compliance with the federal rules, an answer has not been filed in the action and issue has not been joined. Defendant's latter motion was not referred to me and it has languished. On the other hand, plaintiff's motion to amend the complaint, which was referred to me and which sought to add a claim against the County under *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), included as an attachment an "Amended Complaint" which contained separately numbered paragraphs as requested in defendant's original motion.

Because defense counsel had not been served with the motion to amend, which attached the Amended Complaint filed in response to defendant's motion seeking an amended complaint with numbered paragraphs, I ordered the Clerk to make copies and send the motion to amend and Amended Complaint to defense counsel. Order of May 31, 1990 (docket entry # 17). As indicated, defendants have not answered the Amended Complaint. Accordingly, defendants' motion for an order directing plaintiff to serve an Amended Complaint with separately numbered paragraphs (docket entry # 6) and plaintiff's motion to file an amended complaint (docket entry # 11), are both granted and defendants must respond thereto (i.e., to docket entry # 11) within 20 days of service of this order upon defendants.[2]

While these motions were pending, other motions were filed by the parties seeking dispositive relief. First, plaintiff filed a motion for a directed verdict (docket entry # 18), which upon request was converted to a motion for summary judgment by my order dated January 14, 1991 (docket entry # 20). Defendant Moehrle responded by filing an affidavit in opposition to the motion for summary judgment and he cross moved for summary judgment on the basis of the same affidavit and an affidavit of defense counsel (docket entry ## 23–26). Plaintiff has not responded to defendants' motion for summary judgment.

The following is my Report and Recommendation that the motion for summary judgment and the cross motion for

---

**1.** By order filed this date, Judge Larimer has now referred the entire matter to me subject to the jurisdictional limitations of 28 U.S.C. § 636(b)(1)(A)–(B).

**2.** I say defendants because the amended complaint clearly seeks to implicate the County of Erie under the *Monell* doctrine. Plaintiff's amended complaint does not specifically name Erie County in the caption, but paragraph (5) clearly alleges that the "County of Erie is also responsible." Furthermore, plaintiff alleges that "other unknown persons" are responsible for some of the events which comprise his complaint. The motion to compel discovery, granted by order dated March 26th (docket entry

# 27), is designed to facilitate discovery of the identity of these unnamed persons. Once that discovery is afforded, if it has not already been afforded as promised in defense counsel's March 28, 1991 correspondence with the court, plaintiff must file and serve an additional amended complaint which names those who he wishes to sue in addition to Chief Moehrle and the County of Erie. Defendants are directed to send a copy of that discovery to the court forthwith. As it stands now, however, Chief Moehrle and the County of Erie are deemed party defendants named in the Amended Complaint and it is as to these two defendants that the obligation to answer within 20 days exists:

summary judgment be denied.[3] Plaintiff's Amended Complaint alleges that "in early 1988" while he was confined at the Erie County Correctional Facility, he was physically forced to endure physical and medical restraints for several days, during which he was injected with anti-psychotic and tranquilizer medications by force in violation of his Eighth Amendment right to be free from cruel and unusual punishment and his Fifth and Fourteenth Amendment right to procedural Due Process. Plaintiff alleges that, while in the segregation unit, Lt. Pawlczak directed plaintiff to submit, through the food slot in his cell door, to a buttock injected application of medication. Plaintiff alleges that he refused, but was told that he had "no choice in the matter." Plaintiff alleges that, when he made a vulgar remark, the door opened and between six and ten officers entered his cell, "in full riot gear, [where] they threw me on the floor, removed all my clothing, handcuffed me in the back placed me face down on the bed and (someone) then injected a[n] unknown substance into my buttock area, [t]wice." Amended Complaint ¶ (2). Plaintiff further alleges that, [t]hey left [him] handcuffed for approximately 10 hours." According to plaintiff, as the officers left the cell, someone remarked to the effect: "that should shut him up for a few hours." Plaintiff alleges that the effect of the medication was to induce hallucinations and a restriction of his physical capacity to "lie down or use a toilet." Amended Complaint ¶ (2).

Plaintiff described one other specific occasion, not placed in time however, in which he was told by a correction or jail officer to take an injection "because it's sleepy-time" and "because we[']re sick of your mouth." Amended complaint ¶ (3). Plaintiff alleges that, when he called the officers names, that they "came pouring into my cell" with a can of tear gas pointed at his face and forced him to submit to another injection which caused hallucina-

tions within 30 minutes and other mental trauma. Amended Complaint ¶ (3). Plaintiff alleges that he protested the injections without his consent and that "there were approximately 6 incidents where I was involuntarily medicated, which the details of I am unable to recall." Amended Complaint ¶¶ (6)–(7).

Finally, plaintiff contends that Chief Moehrle was the direct supervisor of the Erie County Correctional Facility and that he had supervisory liability for the actions complained of. Plaintiff also contends that the County of Erie "has unconstitutional policies regarding the involuntary medicating of prisoners in their custody, and the County is responsible for ordering the officers in their employ to commit unconstitutional acts and/or having a policy so vague that it could be misinterpreted to allow forced medicating for punitive or anti-therapeutic purposes." Amended Complaint ¶¶ (4)–(5).

Chief Moehrle filed an affidavit in opposition to plaintiff's motion and in support of defendant's cross motion. He concedes that he is the commanding officer of all security personnel at the Erie County Correctional Facility. Defendant states that plaintiff was incarcerated at the Erie County Correctional Facility between September 29, 1987 and December 12, 1987. Moehrle alleges that "plaintiff was an extreme disciplinary problem," who was "reported for disciplinary action thirty-two (32) times on ninety (90) charges of violating Erie County Correctional Facility rules and regulations during his three month incarceration period." Moehrle affidavit at ¶ 5–7. Moehrle contends that plaintiff was afforded due process in regard to each of his disciplinary hearings and sanctions, and "that plaintiff was assigned to punitive segregation, administrative segregation, and special housing after various disciplinary hearings." Moehrle affidavit at ¶ 9. In regard to the administration of medi-

---

**3.** These motions are treated as made with respect to the original complaint which did not implicate the County of Erie. Thus, plaintiff's motion is treated as one for summary judgment against Moehrle only, and defendants' cross-motion is treated as being made by Moehrle only.

cation by injection, Moehrle alleges that plaintiff had "a propensity for violent behavior and an extensive mental health history," which caused "continual referral[s] to the Facility's Forensic Mental Health Services throughout his incarceration." Moehrle affidavit at ¶ 10. Moehrle alleges that a psychiatrist at the facility, who is unnamed, placed plaintiff on "psychotropic drug therapy ... to control outbursts of violent behavior," and that, "on one occasion in October of 1987, during a violent behavioral episode which included threats of death and physical harm to security personnel, it was necessary to restrain and administer prescribed medication to the plaintiff." Moehrle affidavit at ¶ 11–12. Moehrle contends that this was the only incident in which physical restraint of the plaintiff to administer medication was necessary, and that the medication "was administered by a qualified medical aide following the orders of the Facility's psychiatrist." The amount of force used on that one occasion was "minimal." Moehrle affidavit at ¶¶ 13–15. Moehrle does not say how many times plaintiff was medicated, nor does he deny that plaintiff was medicated with the psychotropic drugs against his will.

Chief Moehrle's affidavit alleging that plaintiff was a disciplinary nightmare and that administration of the psychotropic drug therapy occurred at the hands of a "qualified medical aide following the orders of the facility's psychiatrist" is insufficient to entitle defendant to summary judgment. The Supreme Court has held that, "given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate *who has a serious mental illness* with anti-pschotic drugs against his will, *if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028, 1039–40, 108 L.Ed.2d 178 (1990) (emphasis supplied). *See also, Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); *Chambers v. Ingram*, 858 F.2d 351, 359 (7th Cir.1988) (collecting pre-*Harper* cases). Whether or not any Erie County Correctional Facility or other state law procedures created a liberty interest in being free from refused psychiatric drug treatment, plaintiff "possesse[d] a significant liberty interest in avoiding the unwanted administration of anti-psychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Washington v. Harper*, 110 S.Ct. at 1036. "The extent of a prisoner's right under the Clause to avoid the unwanted administration of anti-psychotic drugs must be defined in the context of the inmate's confinement." *Id.* 110 S.Ct. at 1037. The Due Process Clause demands, at least, "a medical finding[ ] that a mental disorder exists which is likely to cause harm if not treated." *Id.* 110 S.Ct. at 1037. In addition, the Due Process Clause requires "that the medication must be first prescribed by a psychiatrist, and then approved by a reviewing psychiatrist, [which] insures that the treatment in question will be ordered only if it is in the prisoner's medical interest, given the legitimate needs of his institutional confinement." *Id.* 110 S.Ct. at 1037. *Washington v. Harper* thus holds that, as a matter of substantive due process, a prison inmate has a right to be free from the unwanted administration of anti-psychotic drugs where the state fails to establish the foregoing substantive prerequisites.

In addition to the substantive Due Process Clause protection "which permits refusal of anti-psychotic drugs unless certain preconditions are met," there are certain necessary procedural protections established in *Washington v. Harper, supra,* "to ensure that the decision to medicate an inmate against his will is neither arbitrary or erroneous under the standards we have discussed above." *Id.* 110 S.Ct. at 1040. Although a judicial decisionmaker is not necessary—"the Constitution does not prohibit the State from permitting medical personnel to make the decision under fair procedural mechanisms," *id.* 110 S.Ct. at 1042—the Supreme Court has upheld a state policy regulation of the kind described as follows:

As written, the Policy requires that the decision whether to medicate an inmate

against his will be made by a hearing committee composed of a psychiatrist, psychologist, and the Center's Associate Superintendent. None of the committee members may be involved, at the time of the hearing, in the inmate's treatment or diagnosis; members are not disqualified from sitting on the committee, however, if they have treated or diagnosed the inmate in the past. The Committee's decision is subject to review by the Superintendent; if the inmate so desires, he may seek judicial review of the decision in a state court.

*Washington v. Harper,* 110 S.Ct. at 1040. The policy regulation upheld in *Harper* "requires two medical inquiries: first, whether the inmate suffers from a 'mental disorder'; and second, whether, as a result of that disorder, he is dangerous to himself, others, or their property." *Id.* 110 S.Ct. at 1042.

In its opinion upholding the state policy regulations at issue in *Harper,* the Supreme Court stated the following:

Adequate procedures exist here. In particular, independence of the decision maker is addressed to our satisfaction by these procedures. None of the hearing committee members may be involved in the inmate's current treatment or diagnosis. The record before us, moreover, is limited to the hearings given to the respondent. There is no indication that any institutional biases affec[t] or alte[r] the decision to medicate respondent against his will. The trial court made specific findings that respondent has a history of assaultive behavior which his doctors attribute to his mental disease, and that all of the Policy's requirements were met.... The Court found also that the medical treatment provided to respondent, including the administration of anit-psychotic drugs, was at all times consistent 'with the degree of care, skill, and learning expected of a reasonably prudent psychiatrist in the State of Washington, acting in the same or similar circumstances.'

*Washington v. Harper,* 110 S.Ct. at 1043. Finally, "[t]he Policy provides for notice,

the right to be present at an adversary hearing, and the right to present and cross examine witnesses." *Id.* 110 S.Ct. at 1044. Those protections, together with the provision for judicial review of the ultimate medical decision upon petition of the inmate, was held to accord with the procedural component of the Due Process Clause.

Summary judgment may not be entered in the absence of a finding that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). *See Lujan v. National Wildlife Federation,* — U.S. —, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Coach Leatherware Company v. AnnTaylor, Inc.,* 933 F.2d 162, 166–67 (1991). *See also, Graham v. Lewinski,* 848 F.2d 342 (2d Cir.1988). In the absence of an answer to the Amended Complaint, and in view of the absence of any proof submitted by either party concerning many of the individual facets of plaintiff's substantive and procedural due process claim as outlined above, it would be inappropriate to enter summary judgment at this stage of the proceedings. In short, material issues of fact exist concerning, among other things, whether, in regard to the substantive due process claim, plaintiff suffered from a "serious mental illness," *id.* 110 S.Ct. at 1039–40, and whether such a mental disorder, if it existed, was demonstrably "likely to cause harm if not treated," *id.* 110 S.Ct. at 1037. The "facility's psychiatrist" mentioned in Chief Moehrle's affidavit is unnamed. Indeed, the psychotropic drug used is not identified.

In regard to the procedural due process component of plaintiff's claim, there are material issues of fact whether any procedures existed at all to ensure that the substantive determination of need for the administration against plaintiff's will of antipsychotic drugs, would not be erroneous. For example, there is no proof that the decisionmaker was neutral and detached, and there is no indication of any patient access to the decision making process. Furthermore, there is no indication of a review process. As a separate matter, there is no proof in the record whether

plaintiff was a sentenced inmate or a pretrial detainee, nor is there any submissions on either side whether, if he was a pre-trial detainee, a different rule other than articulated in *Washington v. Harper* should apply. Finally, Chief Moehrle's affidavit concedes personal knowledge of many of the circumstances of plaintiff's disciplinary history and treatment thus raising a fair issue of material fact on the supervisory liability issue in the event plaintiff may prove that his due process rights were violated.[4]

Accordingly, the motion for summary judgment and the cross motion for summary judgment are recommended to be denied.

## CONCLUSION

The foregoing is my Decision and Order that defendant's motion for an order directing plaintiff to file an amended complaint with numbered paragraphs, and plaintiff's motion for an order granting leave to file an amended complaint, be granted. Defendants are ordered to file and serve an answer to the amended complaint within 20 days of service of this order. This is also my Report and Recommendation that plaintiff's motion for summary judgment and defendant's cross motion for summary judgment each be denied.

The parties should be on notice that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Local Rule 30(a)(3), any objections to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt thereof. Failure to file objections within the specified time waives the right to appeal a District Court Order adopting this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a) and 6(c); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,*

892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir.1988).

Rochester, New York

Dated: September 12, 1991

---

**4.** Although the Second Circuit has left open the issue whether a *pro se* complaint affirmed under penalty of perjury, 28 U.S.C. § 1746, suffices as an affidavit within the meaning of Rule 56, *Graham v. Lewinski*, 848 F.2d at 343–44, the complaint in that case was "devoid of specific facts" thus requiring a remand for supplementation of the record. In this case, the Amended Complaint alleges specific facts and, with peculiar procedural posture of the cross motions for summary judgment, I find it sufficient to defeat Rule 56 relief. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).